1  STAN S. MALLISON (SBN 184191)
       StanM@TheMMLawFirm.com
2  HECTOR R. MARTINEZ (SBN 206336)
       HectorM@TheMMLawFirm.com
3  CODY A. BOLCE (SBN 322725)
       CBolce@TheMMLawFirm.com
4  DAN KELLER (SBN 332576)
       DKeller@TheMMLawFirm.com
5  MALLISON & MARTINEZ
   1939 Harrison Street, Suite 730
6  Oakland, California 94612-3547
   Telephone: (510) 832-9999
7  Facsimile: (510) 832-1101

8  Attorneys for Representative Plaintiffs
   And the Plaintiff Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

VICTOR LOPEZ and JOHN SMITHSON, individually, and on behalf of all others similarly situated,

        Plaintiffs,

vs.

KEENAN & ASSOCIATES,

        Defendant.

Case No.

**CLASS ACTION COMPLAINT**

1. Violation of the California Consumer Privacy Act, Civil Code § 1798.150, *et seq.*

2. Violation of California Business & Professions Code § 17200, *et seq.*

3. Negligence

4. Negligence Per Se

5. Breach of Contract

6. Breach of the Implied Covenant of Good Faith and Fair Dealing

7. Breach of the Implied Contract

8. Breach of Confidence

9. Breach of Fiduciary Duty

10. Unjust Enrichment

11. Confidentiality of Medical Information Act, Civil Code § 56, *et seq.*

**DEMAND FOR JURY TRIAL**

1

Plaintiffs Victor Lopez and John Smithson ("Plaintiffs"), individually, and on behalf of all others similarly situated ("Class Members"), brings this Class Action Complaint against KEENAN & ASSOCIATES ("Defendant"), as follows:

## I. INTRODUCTION

1.      Plaintiffs bring this class action against Defendant for its failure to properly secure and safeguard personally identifiable information that Defendant stored on its network systems, including, without limitation, dates of birth, Social Security numbers, passport numbers, driver's license numbers, health inruance information, and other general health information  (collectively, "personally identifiable information" or "PII").[1] This is the second data breach of Defendant's information data base in less than 2 years, resulting in the exfiltration of consumer data, and therefore was entirely foreseeable.

2.      According to its website, Defendant is an insurance broker, founded in 1972, and has now grown to be the 11th largest broker in the nation. Defendant purports to provide innovative insurance and financial solutions for schools, pulic agencies, and health care organiztions, and employs over 800 individuals.

3.      In connection with that work, Defendant obtains an extensive amount of individuals' PII. However, as alleged herein, Defendant has failed to adequately safeguard such data to prevent unauthorized disclosure to malfeasors.

4.      Indeed, on or before August 27, 2023, Defendant discovered "certain disruptions" on its network servers. Defendant's subsequent investigation realed that an "unauthorized party gained access" to Defendant's internal systems, "at various times between approximately August 21, 2023

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 CFR § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on their face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security number, passport number, driver's license number, financial account number).

and August 27, 2023," and that unauthorize party "obtained some data" from Defendant's systems.[2] That data included the PII of the nature described above.

5.    Defendant has not disclosed when it completed the foregoing investigation. However, despite the data breach occurring in August of 2023, Defendant did not notify consumers of same until January of 2024. Plaintiffs were among the individuals whose data was compromised, and to whom Defendant provided notice. Plaintiffs are informed and believe and, based thereon, allege that the number of individuals whose PII was compromised is approximately 1.5 million ("Class Members").

6.    By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII, Defendant assumed legal and equitable duties to those individuals.

7.    Time is of the essence when highly sensitive PII is subject to unauthorized access and/or acquisition. It took nearly six months for Defendant to publicly report this Data Breach. The compromised PII of Plaintiffs and Class Members can be sold on the dark web. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals. Plaintiffs and Class Members now face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, and/or activity by cybercriminals on computer systems containing millions of Social Security numbers.

8.    The Data Breach occurred due to Defendant's negligent and/or careless acts and omissions and the failure to protect the PII of Plaintiffs and Class Members. It is unclear whether Defendant has yet provided notice of the Data Breach to all affected individuals, and Defendant still maintains as secret the specific vulnerabilities and root causes of the Data Breach. Plaintiffs and Class Members also remain unaware of precisely what information was accessed and subject to unauthorized activity and for how long. Nearly six months passed before Defendant gave notice that Plaintiffs' and Class Members' PII was accessed and/or acquired by unauthorized actors, leaving Plaintiffs and Class Members exposed, without knowledge or recourse, for the entirety of that time.

---

[2] https://oag.ca.gov/system/files/EXPERIAN_K7150_KeenanAssociates_Notice%20Letter_Redacted.pdf (last visited February 23, 2023)

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

9. This PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect PII of Plaintiffs and Class Members.

10. Plaintiffs bring this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of its inadequate information security practices; and (iii) comply with industry standards to protect information systems that contain PII and, as a result, Defendant's systems containing customer PII experienced unauthorized access, disclosure, and exfiltration. Defendant's conduct amounts to negligence and violates federal and state statutes. Plaintiffs seek, among other things, orders requiring Defendant to fully and accurately disclose the nature of the information that has been compromised and to fully and accurately disclose the circumstances under which that information was compromised, to adopt reasonably sufficient security practices and safeguards to prevent future unauthorized access, disclosure, and exfiltration, to destroy information no longer necessary to retain for purposes for which the information was first obtained from Class Members.

11. Following the breach and recognizing that Plaintiffs, along with each and every Class Member, are now subject to the present and continuing risk of identity theft and fraud, Defendant offered Plaintiffs and Class Members credit monitoring and identity repair services for twenty-four months through Experian. The offered services are insufficient to protect Plaintiffs and Class Members from the lifelong implications of having their most private PII accessed, acquired, exfiltrated, and/or published onto the internet. As another element of damages, Plaintiffs and Class Members seeks a sum of money sufficient to provide to then with identity theft protective services for their respective lifetimes.

12. Plaintiffs and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and significantly (iv) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties

4

to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

13. Defendant disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiffs' and Class Members' PII was safeguarded, failing to take available steps to prevent another unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiffs and Class Members was compromised through disclosure to and/or acquisition by an unknown and unauthorized third party(ies). Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. PARTIES

14. Plaintiff Victor Lopez is a natural person and citizen of the State of California.

15. Plaintiff John Smithson is a natural person and citizen of the State of California.

16. Defendant Keenan & Associates is a California based corporation or other form of business entity, headquartered at 2355 Crenshaw Blvd., Torrance, CA 90501.

17. The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiffs. Plaintiffs will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

18. All of Plaintiffs' claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III. JURISDICTION AND VENUE

19. This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum

or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one other Class Member is a citizen of a state different from Defendant to establish minimal diversity.

20.    The Central District of California has personal jurisdiction over Defendant because Defendant resides within this judicial district.

21.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) because Defendant resides in and has its principal place of business (i.e., its "nerve center"), within the Central District of California.

## IV.    FACTUAL ALLEGATIONS

22.    Defendant used its internal systems to store and/or share some of Plaintiffs' and Class Members most sensitive and confidential information, including name, date of birth, Social Security number, passport number, and driver's license number—types of PII which are static, do not change, and can therefore be used to commit myriad financial crimes. Defendant also leaked highly sensitive information, which it describes as "health insurance information, and general health information."

23.    Plaintiffs and Class Members relied on this sophisticated Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiffs and Class Members demand security to safeguard their PII.

24.    Defendant had a duty to adopt reasonable measures to protect Plaintiffs' and Class Members' PII from involuntary disclosure to third parties.

***The Data Breach***

25.    On or about January 26, 2024, Defendant sent a standard notification letter[3] to Class Members, including Plaintiffs, reporting the data breach. That letter, entitled "Re: Notice of Data Security Incident," that read, in part, as follows:

---

[3] https://oag.ca.gov/system/files/EXPERIAN_K7150_KeenanAssociates_Notice%20Letter_Redacted.pdf (last visited February 23, 2023)

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Keenan & Associates ("Keenan") is an insurance brokerage company that provides insurance-related risk management and claims services throughout California and to clients across the country. Keenan services companies and organizations across a variety of industries, and, in the course of its work on behalf of clients, is at times provided access to personal information as a part of the client engagement. We receive and utilize this data for the purposes of performing services for our clients.

We are writing to inform you that we experienced a cybersecurity incident that involved some of your personal information. Keenan was in possession of that information due to its work on behalf of one of its customers. This notice explains the incident, steps we have taken in response, and additional information on steps you may take to help protect your information.

**What Happened**

On Sunday, August 27, 2023, we discovered certain disruptions occurring on some Keenan network servers. We immediately began an investigation and engaged leading third-party cybersecurity and forensic experts to assist. Upon detection, we took prompt action to contain it. Keenan also notified law enforcement.

The investigation determined that an unauthorized party gained access to certain Keenan internal systems at various times between approximately August 21, 2023 and August 27, 2023, and that the unauthorized party obtained some data from Keenan systems. A thorough review of that data was conducted to identify what information was involved and identify individuals to whom the data related.

**What Information Was Involved**

The review determined that the data involved contained some of your personal information, including your name and one or more of the following: date of birth, Social Security number, passport number, driver's license number, health

insurance information, and general health information.

***What We Are Doing***

To help prevent a similar type of incident from occurring in the future, we implemented additional security protocols designed to enhance the security of our network, internal systems and applications. Keenan will also continue to evaluate additional steps that may be taken to further increase our defenses. In addition, we are continuing to support federal law enforcement's investigation.

26.    The letter goes on to offer Class Members a free 24-month membership from credit monitoring through Experian IdentityWorks.

27.    Plaintiffs' and Class Members' unencrypted information may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiffs and Class Members. Unauthorized individuals can easily access the PII of Plaintiffs and Class Members.

28.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiffs and Class Members, causing their PII to be exposed.

***Defendant Acquires, Collects, and Stores Plaintiffs' and Class Members' PII***

29.    Defendant has a posted privacy policy ("Privacy Policy") on its website, at the bottom of its homepage, under a tab entitled "Privacy Policy." The Privacy Policy, which is described as being effective as of January 2020, represents that Defendant has "implemented measures reasonably designed to protect and secure your Personal Information from accidental loss, misuse, and from unauthorized access, use, alteration, and disclosure. Unfortunately, the transmission of information via the Internet is not completely secure, and although we do our best to safeguard such Personal Information using reasonably designed measures, the security of information cannot be guaranteed."[4]

---

[4] https://www.keenan.com/Privacy-Statement (last visited February 23, 2024).

30.     Under another tab at the bottom of Defendant's homepage, labeled as "CCPA," Defendant discloses its "Privacy Policy and Notice for California Residents." This policy, stated as "Effective January 1, 2020," contains a list of certain legitimate business purposes for which Defendant discloses PII, including "performing services on [consumers'] behalf," and "support[ing] business operations, including to meet risk, legal, and compliance requirements."[5] However, noticeably absent from that list is disclosure to "unauthorized parties," as stated in the January 26, 2024 notification letter.

31.     As a condition of providing services to its customers, Defendant requires that its customers entrust Defendant with highly confidential PII.

32.     By obtaining, collecting, and storing the PII of Plaintiffs and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

33.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### *Securing PII and Preventing Breaches*

34.     Defendant could have prevented this Data Breach by properly securing and encrypting the PII of Plaintiffs and Class Members. Alternatively, Defendant could have destroyed the data, especially decade-old data from former customers.

35.     Defendant's negligence in safeguarding the PII of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

36.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiffs and Class Members from being compromised.

---

[5] https://www.keenan.com/CCPA (last visited February 23, 2024).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

37.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[6] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

38.     The ramifications of Defendant's failure to keep secure the PII of Plaintiffs and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

**_Value of Personal Identifiable Information_**

39.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[7] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[8] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[9]

40.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an

---

[6] 17 C.F.R. § 248.201 (2013).

[7] _Your personal data is for sale on the dark web. Here's how much it costs_, Digital Trends, Oct. 16, 2019, _available at_ https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited February 23, 2024).

[8] _Here's How Much Your Personal Information is Selling for on the Dark Web_, Experian, Dec. 6, 2017, _available at_ https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited February 23, 2024).

[9] _In the Dark, VPNOverview_, 2019, _available at_ https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited February 23, 2024).

individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[10]

41.  What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

42.  Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[11]

43.  Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change— name, Social Security number, and potentially date of birth.

---

[10] Social Security Administration, *Identity Theft and Your Social Security Number, available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited February 23, 2024).

[11] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited February 23, 2024).

44.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[12]

45.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

46.     The PII of Plaintiffs and Class Members was taken by hackers to engage in identity theft or and or to sell it to other criminals who will purchase the PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

47.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[13]

48.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiffs and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if the PII was compromised, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members a result.

---

[12] Time Greene, *Anthem Hack: Personal Data Solen Sells for 10x Price of Stolen Credit Card Numbers*, IT World (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited February 23, 2024).

[13] *Report to Congressional Requesters*, GAO at 29 (June 2007), *available at*: https://www.gao.gov/products/gao-07-737 (last visited February 23, 2024).

49.     Plaintiffs and Class Members are each now subject to the present and continuing risk of identity theft and fraud and now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiffs and Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

50.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's file servers, amounting to more than one and half million individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

51.     Following the breach and recognizing that Plaintiff, along with each and every Class Member, is now subject to the present and continuing risk of identity theft and fraud, Defendant offered Plaintiffs and Class Members 24 months of identity monitoring services through a single provider, Experian. The offered service is inadequate to protect Plaintiffs and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

52.     Moreover, Defendant put the burden squarely on Plaintiffs and Class Members to enroll in the inadequate monitoring services, among other steps Plaintiffs and Class Members must take to protect themselves. Time is a compensable and valuable resource in the United States. According to the U.S. Bureau of Labor Statistics, 55.5% of U.S.-based workers are compensated on an hourly basis, while the other 44.5% are salaried.[14]

53.     According to the U.S. Bureau of Labor Statistics' 2018 American Time Use Survey, American adults have only 36 to 40 hours of "leisure time" outside of work per week;[15] leisure time

---

[14] U.S. BUREAU OF LABOR STATISTICS, Wage Worker Survey, *available at* https://www.bls.gov/opub/reports/minimum-wage/2020/home.htm#:~:text=In%202020%2C%2073.3%20million%20workers,wage%20of%2%200%247.25%20per%20hour (last visited February 23, 2024); *see also* U.S. BUREAU OF LABOR STATISTICS*, Average Weekly Wage Data, available at* https://data.bls.gov/cew/apps/table_maker/v4/table_maker.htm#type=1&year=2021&qtr=3&own=5&ind=10&supp=0 (last visited February 23, 2024) (finding that on average, private-sector workers make $1,253 per 40-hour work week.)

[15] *See* James Wallman, *How Successful People Spend Leisure Time*, CNBC (Nov. 6, 2019), *available at* https://www.cnbc.com/2019/11/06/how-successful-people-spend-leisure-time-james-wallman.html (last visited February 23, 2024).

is defined as time not occupied with work or chores and is "the time equivalent of 'disposable income.'"[16] Usually, this time can be spent at the option and choice of the consumer, however, having been notified of the Data Breach, consumers now have to spend hours of their leisure time self-monitoring their accounts, communicating with financial institutions and government entities, and placing other prophylactic measures in place to attempt to protect themselves.

54. Defendant encourages Class Members to undertake these measures, stating "[w]e remind you to be vigilant for incidents of fraud or identity theft by reviewing your account statements and free credit reports for any unauthorized activity."[17]

55. Plaintiffs and Class Members are now deprived of the choice as to how to spend their valuable free hours and seeks renumeration for the loss of valuable time as another element of damages.

56. The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiffs and Class Members.

V. **CLASS ALLEGATIONS**

57. Plaintiffs brings this nationwide class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

58. The Nationwide Class that Plaintiffs seek to represent is defined as follows:

All individuals residing in the United States whose personally identifiable information was accessed and/or acquired by an unauthorized party as a result of the data breach reported by Keenan & Associates on or about January 26, 2024 (the "Nationwide Class").

59. The California Class that Plaintiffs seek to represent is defined as follows:

---

[16] *Id*.

[17]
https://oag.ca.gov/system/files/EXPERIAN_K7150_KeenanAssociates_Notice%20Letter_Redacted.pdf (last visited February 23, 2023)

All individuals residing in the State of California whose personally identifiable information was accessed and/or acquired by an unauthorized party as a result of the data breach reported by Keenan & Associates on or about January 26, 2024 (the "California Class").

60.     Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members and staff.

61.     Plaintiffs reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

62.     <u>Numerosity</u>, Fed R. Civ. P. 23(a)(1): The Nationwide Class (the "Class") is so numerous that joinder of all members is impracticable. Plaintffs are informed and believe that more than 1.5 million individuals were affected by the Data Breach.

63.     <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

      a.     Whether and to what extent Defendant had a duty to protect the PII of Plaintiffs and Class Members;

      b.     Whether Defendant had a duty not to disclose the PII of Plaintiffs and Class Members to unauthorized third parties;

      c.     Whether Defendant had a duty not to use the PII of Plaintiffs and Class Members for non-business purposes;

      d.     Whether Defendant failed to adequately safeguard the PII of Plaintiffs and Class Members;

      e.     Whether and when Defendant actually learned of the Data Breach;

f.   Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

g.   Whether Defendant violated the law by failing to promptly notify Plaintiffs and Class Members that their PII had been compromised;

h.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.   Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.   Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members;

k.   Whether Plaintiffs and Class Members are entitled to actual, damages, and/or statutory damages as a result of Defendant's wrongful conduct;

l.   Whether Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m.   Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

64.   <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendant's misfeasance.

65.   Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

66.     Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

67.     <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

68.     The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the claim for relief alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

69.     The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

70.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

71.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to act unlawfully as set forth in this Complaint.

72.     Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

73.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.   Whether Defendant owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    b.   Whether Defendant breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    c.   Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

    d.   Whether an implied contract existed between Defendant on the one hand, and Plaintiffs and Class Members on the other, and the terms of that implied contract;

    e.   Whether Defendant breached the implied contract;

    f.   Whether Defendant adequately and accurately informed Plaintiffs and Class Members that their PII had been compromised;

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

g. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members; and,

i. Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

**FIRST CLAIM FOR RELIEF**
**Violation of the California Consumer Privacy Act, Civ. Code § 1798.150, *et seq*.**
**(On Behalf of Plaintiffs and the California Class Against Defendant)**

74. Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

75. Plaintiffs brings this claim for relief on behalf of themselves and on behalf of the California Class.

76. The California Consumer Privacy Act ("CCPA"), portions of which were operative beginning January 1, 2020, was enacted by the California Legislature "to further the constitutional right of privacy and to supplement existing laws relating to consumers' personal information, including, but not limited to, Chapter 22 (commencing with Section 22575) of Division 8 of the Business and Professions Code and Title 1.81 (commencing with Section 1798.80)." Cal. Civ. Code § 1798.100. The CCPA applies to "the collection and sale of all personal information collected by a business from consumers." *Id*.

77. "Businesses," defined to include a "corporation" that "collects consumers' personal information" that "does business in the State of California" and has annual gross revenues in excess of $25 million, are required to comply with the CCPA. Cal. Civ. Code § 1798.140(c). Defendant is a "business" under the CCPA.

78. The CCPA protects "consumers." "Consumer" is defined as "a natural person who is a California resident[.]" Cal. Civ. Code § 1798.140(g). Plaintiffs and members of the California Class are "consumers" within the meaning of the CCPA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

79.     The protections of the CCPA extend to "personal information" of consumers. "Personal information" is defined by the CCPA to include "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household." Cal. Civ. Code § 1798.140(o)(1). "Personal information includes, but is not limited to, the following if it identifies, relates to, describes, is reasonably capable of being associated with, or could be reasonably linked, directly or indirectly, with a particular consumer or household: (A) Identifiers such as... driver's license number, ...." Cal. Civ. Code § 1798.140(o)(1)(A). The PII of Plaintiffs and members of the California Class that was compromised in Defendant's data breach included "personal information" within the meaning of the CCPA.

80.     The CCPA provides consumers with the right to institute a civil action where the consumers' "nonencrypted and nonredacted personal information" was the subject of "an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information." Cal. Civ. Code § 1798.150(a)(1).

81.     Plaintiffs and California Class members provided to Defendant their nonencrypted and nonredacted personal information as defined in § 1798.81.5 in the form of their PII.

82.     Defendant, as a "business" covered by the CCPA, owed a duty to Plaintiffs and members of the California Class to implement and maintain reasonable security procedures and practices to protect the PII of Plaintiffs and members of the California Class.

83.     Defendant breached this duty. In or about January 26, 2024, Defendant notified Class Members and various law enforcement officials, that its customers' PII was subject to a data security breach.

84.     The fact that Plaintiffs and the California Class's PII was accessed without authorization establishes that Defendant did not take adequate data security measures to store and protect its customers' PII. Defendant failed to take adequate security measures to protect Plaintiffs and the California Class members' PII.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

85.     As a direct and proximate result of Defendant's acts and omissions, Plaintiffs and the members of the California Class were subjected to unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violation of the duty.

86.     On behalf of the California Class, Plaintiffs seek injunctive relief in the form of an order (a) enjoining Defendant from continuing to violate the CCPA; and (b) requiring Defendant to employ adequate security practices consistent with law and industry standards to protect class members' PII.

87.     Plaintiffs and California Class members are at high risk of suffering, or have already suffered, injuries that cannot be remedied monetarily, such as reductions to their credit scores and identity theft. As such, the remedies at law available to Plaintiffs and California Class members are wholly inadequate by themselves.

88.     The full extent of the existing and potential harm caused by Defendant's failure to protect its customers' PII cannot be remedied by monetary damages alone because monetary compensation does nothing to prevent the reoccurrence of another data breach in the future.

89.     Plaintiffs presently seeks only injunctive relief and any other relief the court deems proper pursuant to this section, such as attorneys' fees. Plaintiffs will serve written notice identifying Defendant's violation of Civ. Code § 1798.150(a) demanding that the Data Breach be cured, and will amend this Complaint to seek statutory damages pursuant to Civ. Code § 1798.150(a)(1)(A) if Defendant does not timely cure the Data Breach.

### SECOND CLAIM FOR RELIEF
**Violation of the California Business & Professions Code § 17200, *et seq*.**
**(On Behalf of Plaintiffs and the California Class Against Defendant)**

90.     Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

91.     Plaintiffs bring this claim for relief on behalf of himself and on behalf of the California Class.

92.     California Business and Professions Code section 17200, *et seq*., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

### *The Unlawful Prong of the UCL*

93.     A claim for relief may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such an action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL.

94.     Here, Defendant's "unlawful" acts and practices include violating California Civil Code section 1798.150 as described above, and failing to implement and maintain reasonable security measures contrary to legislatively declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45 and California's Consumer Records Act, Cal. Civ. Code § 1798.81.5 pertaining to "security procedures and practices with respect to personal information about California residents."

### *The Unfair Prong of the UCL*

95.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

96.     Here, Defendant's unfair acts and practices include:

    a.  failing to abide by the provisions of California Civil Code section 1798.150

    b.  failing to implement and maintain reasonable security measures contrary to legislatively declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45 and California's Consumer Records Act, Cal. Civ. Code § 1798.81.5

c. failing to implement and maintain reasonable security measures to protect Plaintiffs and the California Class's PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the data breach. Defendant failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security despite knowing the risk of cybersecurity incidents. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiffs and the California Class, whose PII has been compromised; and

d. failing to implement and maintain reasonable security measures, which also led to substantial consumer injuries, as described above, and which are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of Defendant's inadequate security, consumers could not have reasonably avoided the harms that Defendant caused.

***The Fraud Prong of the UCL***

97.     A business act or practice is "fraudulent" within the meaning of the UCL if members of the public are likely to be deceived.

98.     Here, Defendant's fraudulent acts and practices include:

a. misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and the California Class's PII, including by implementing and maintaining reasonable security measures; and

b. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and the California Class's PII.

99.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' PII.

100.     As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and members of the California Class were injured and lost money or property, including, but not limited to: the money received by Defendant for its services; the loss of the benefit of their bargain with and overcharges by Defendant as they would not have paid Defendant for

23

services or would have paid less for such services but for the violations alleged herein; losses from fraud and identity theft; any costs they will have to incur for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their PII; and an increased, imminent risk of fraud and identity theft.

101. Plaintiffs and the California Class seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices or use of their PII; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure section 1021.5; injunctive relief; and other appropriate equitable relief.

**THIRD CLAIM FOR RELIEF**
**Negligence**
**(On Behalf of Plaintiffs and the Nationwide Class Against Defendant)**

102. Plaintiffs incorporates by reference the allegations contained in each and every paragraph of this Complaint.

103. Defendant required the submission of Plaintiffs' and the Class Memebers' sensitive PII in order to provice its insurance brokerage and other services. Defendant stored this sensitive and valuable PII on its computer and data storage systems.

104. By collecting, storing, using, and profiting from this data, Defendant had a duty of care to Plaintiffs and the Class to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting this PII in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing Defendant's security systems and data storage architecture to ensure that Plaintiffs and the Class's PII was adequately secured and protected; (b) implementing processes that would detect an unauthorized breach of Defendant's security systems and data storage architecture in a timely manner; (c) timely acting on all warnings and alerts, including public information, regarding Defendant's security vulnerabilities and potential compromise of the compiled data of Plaintiffs and the Class; (d) maintaining and implementing data security measures consistent with industry standards; and (e) instituting data security policies and procedures, and adequately training employees and franchisees on such policies and procedures.

105. Defendant had common law duties to prevent foreseeable harm to Plaintiffs and the Class. These duties existed because Plaintiffs and members of the Class were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiffs and the Class would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, Defendant knew that it was more likely than not that Plaintiffs and other class members would be harmed by such theft.

106. Defendant had a duty to monitor, supervise, control, or otherwise provide oversight to safeguard the PII that was collected and stored on its computer systems.

107. Defendant's duties to use reasonable security measures also arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiffs and members of the Class, on the other hand. The special relationship arose because Plaintiffs and members of the Class entrusted Defendant with their PII in order to purchase financial products. Defendant alone could have ensured that its security systems and data storage architecture were sufficient to prevent or minimize the data breach.

108. Defendant knew or should have known that its computer systems and data storage architecture were vulnerable to unauthorized access and targeting by hackers for the purpose of stealing and misusing confidential PII.

109. Defendant breached the duties it owed to Plaintiffs and Class members described above and thus was negligent. Defendant breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiffs and the Class; (b) detect the breach while it was ongoing; (c) maintain security systems consistent with industry standards; and (d) institute data security policies and procedures, and adequately train employees and franchisees on such policies and procedures.

110. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and the Class members, their PII would not have been compromised.

111. As a direct and proximate result of Defendant's negligence, Plaintiffs and the Class have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes,

fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the data breach reviewing bank statements, credit card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non- economic harm.

## FOURTH CLAIM FOR RELIEF
### Negligence Per Se
### (On Behalf of Plaintiffs and the Nationwide Class Against Defendant)

112.     Plaintiffs incorporates by reference the allegations contained in each and every paragraph of this Complaint.

113.     Defendant's duties arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by a business, such as Defendant, of failing to employ reasonable measures to protect and secure PII, including Protected Health Information ("PHI").

114.     Defendant violated Security Rules and Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiffs' and all other Class Members' PII and PHI and not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtains and stores, and the foreseeable consequences of a data breach involving PII and PHI including, specifically, the substantial damages that would result to Plaintiffs and the other Class Members.

115.     Defendant's violations of Security Rules and Section 5 of the FTC constitutes negligence per se.

116.     Plaintiffs and Class Members are within the class of persons that Security Rules and Section 5 of the FTCA were intended to protect.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

117.    The harm occurring as a result of the Data Breach is the type of harm Security Rules and Section 5 of the FTCA were intended to guard against.

118.    It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' PII and PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiffs' and Class Members' PII and PHI to unauthorized individuals.

119.    The injury and harm that Plaintiffs and the other Class Members suffered was the direct and proximate result of Defendant's violations of Security Rules and Section 5 of the FTCA. Plaintiffs and Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, inter alia: (i) a substantially increased risk of identity theft— risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII and PHI; (iii) breach of the confidentiality of their PII and PHI; (iv) deprivation of the value of their PII and PHI, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach; and (vi) actual or attempted fraud .

### FIFTH CLAIM FOR RELIEF
**Breach of Contract**
**(On Behalf of Plaintiffs and the Nationwide Class Against Defendant)**

120.    Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

121.    At all relevant times, Defendant and Plaintiffs and the Class mutually assented to and therefore were bound by the version of Defendant's privacy/security policy (the "Contract") that was operative at the time Plaintiffs and each of the Class members purchased products from Defendant.

122.    Defendant's privacy policy forms a binding contract between Defendant and Plaintiffs and the Class.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

123.    Throughout the Class Period, Defendant affirmatively stated in the Contract that it would utilize sufficient data security protocols and mechanisms to protect its customers' data from unauthorized access.

124.    Specifically, Defendant represented that "[w]e have implemented measures reasonably designed to protect and secure your Personal Information from accidental loss, misuse, and from unauthorized access, use, alteration, and disclosure."[18]

125.    Defendant breached the Contract by failing to have proper safeguards to protect Plaintiffs and the Class members' PII and allowing a malicious third party to access that information without permission. Defendant violated its commitment to maintain the confidentiality and security of the PII of Plaintiffs and the Class and failed to comply with its own polices and industry standards related to data security.

**SIXTH CLAIM FOR RELIEF**
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiffs and the Nationwide Class Against Defendant)**

126.    Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

127.    Plaintiffs and the Class members entered contracts with Defendant which included the implied terms that Defendant would not expose the PII to hackers and that Defendant would take reasonable measures to protect the PII.

128.    In these contracts, as in every contract, there was an implied covenant of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another, that is, being faithful to one's duty or obligation.

---

[18] https://www.keenan.com/Privacy-Statement (last visited February 23, 2024).

129.    Plaintiffs and the Class members performed everything that they were required to do under the contract by supplying their PII and paying for the products/services in question. All conditions for Defendant's performance have occurred or were excused.

130.    Defendant failed to protect the PII from exposure to hackers and failed to adopt reasonable measures to protect the PII, operating a website with numerous security flaws as shown above.

131.    By doing so, Defendant did not act fairly and in good faith. Good faith and fairness required Defendant to protect the PII from hackers, including by adopting reasonable measures. Consumers must count on companies who collect their PII to protect that PII in order to facilitate commercial transactions, which increasingly occur over the internet.

132.    As a result of this conduct, Plaintiffs and the Class members were damaged. Plaintiffs and the Class members' PII is being sold by nefarious individuals on the dark web. As a result, Plaintiffs and the Class members have been forced to incur out of pocket costs for credit monitoring, and to take time and effort to cancel credit cards and/or freeze accounts. Plaintiffs and the Class members have also lost the benefit of their bargain. Plaintiffs and the Class members agreed to provide their PII to Defendant with the understanding that their PII would be protected. Had Plaintiffs and the Class members known that their PII would not be protected, they would not have agreed to pay the price which they contracted for in exchange for the goods. Plaintiffs and the Class members also face a significant risk that their PII will be stolen, that they will lose money, and that their identities will be stolen as a result of the breach. That risk only increases as time passes and no action is taken. Finally, Plaintiffs and the Class members have lost the value of their PII, which has a real market value.

133.    Plaintiffs have suffered monetary injury in fact as a direct and proximate result of the acts committed by Defendant, as alleged herein, in an amount to be proven at trial, but in excess of the minimum jurisdictional amount of this Court.

134.    Defendant and Plaintiffs and the Class members entered an implied contract governing the use and protection of PII when Plaintiffs and the Class members supplied their PII in order to purchase goods from Defendant. Plaintiffs and the Class members performed everything that they

were required to do under the contract by supplying their PII and paying for the goods in question. All conditions required for Defendant's performance have occurred or were excused.

135. This contract was manifested in the conduct of the parties. By agreeing to take Plaintiffs and the Class members' PII into its possession, Defendant impliedly agreed to protect that PII from hackers, who were known to attempt to steal PII by hacking entities which possess it, to adopt reasonable measures to protect the PII from hackers, and to timely notify Plaintiffs and the Class members of a data breach should one occur. Defendant knew, or had reason to know, that by taking the PII, it was engaging in conduct that would lead Plaintiffs and the Class members to believe that it would protect that data from exposure to hackers, due to the known risk of hacking, which was understood by both parties to the contract. Other conduct which gives rise to this contractual agreement is Defendant's adoption of passwords through which Plaintiffs and the Class members ostensibly kept their information private, and the posting of a privacy/security policy on Defendant's website.

136. Defendant breached these promises. As shown, Defendant allowed hackers to obtain its customers' PII. Defendant failed to adopt reasonable security measures to protect its customers' data.

137. As a result of these breaches, Plaintiffs and the Class members were damaged. Plaintiffs and the Class members' PII is being sold by nefarious individuals on the dark web. As a result, Plaintiffs and the Class members have been forced to incur out of pocket costs for credit monitoring, and to take time and effort to cancel credit cards and/or freeze accounts. Plaintiffs and the Class members have also lost the benefit of their bargain. Plaintiffs and the Class members agreed to and provide their PII to Defendant with the understanding that their PII would be protected. Had Plaintiffs and the Class members known that their PII would not be protected, they would not have agreed to pay the price which they contracted for in exchange for the goods/services. Plaintiffs and the Class members also face a significant risk that their PII will be stolen, that they will lose money, and that their identities will be stolen as a result of the breach. That risk only increases as time passes and no action is taken. Finally, Plaintiffs and the Class members have lost the value of their PII, which has a real market value.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

138.     Plaintiffs' and the Class members' losses were caused by Defendant's breach. By allowing the hackers to obtain the PII, Defendant caused Plaintiffs and the Class members to incur out-of-pocket expenses, lose the benefit of their bargain, incur the risk of identity and property theft, and lose the value of their PII. Plaintiffs have suffered monetary injury in fact as a direct and proximate result of the acts committed by Defendant, as alleged herein, in an amount to be proven at trial, but in excess of the minimum jurisdictional amount of this Court.

### SEVENTH CLAIM FOR RELIEF
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Nationwide Class Against Defendant)**

139.     Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

140.     Plaintiffs and the Class also entered into an implied contract with Defendant when they obtained services from Defendant, or otherwise provided PII to Defendant.

141.     As part of these transactions, Defendant agreed to safeguard and protect the PII of Plaintiffs and the Class members.

142.     Plaintiffs and Class members entered into implied contracts with the reasonable expectation that Defendant data security practices and policies were reasonable and consistent with industry standards. Plaintiffs and the Class members believed that Defendant would use part of the monies paid to Defendant under the implied contracts to fund adequate and reasonable data security practices.

143.     Plaintiffs and the Class would not have provided and entrusted their PII to Defendant or would have paid less for Defendant's services in the absence of the implied contract or implied terms between them and Defendant. The safeguarding of the PII of Plaintiffs and Class members was critical to realize the intent of the parties.

144.     Plaintiffs and the Class members fully performed their obligations under the implied contracts with Defendant.

145. Defendant breached its implied contracts with Plaintiffs and the Class members to protect their PII when it failed to have security protocols and measures in place to protect that information which resulted in a data breach.

146. As a direct and proximate result of these breaches of implied contract, Plaintiffs and the Class members sustained actual losses and damages as described in detail above including, but not limited to, that they did not get the benefit of the bargain pursuant to which they provided their PII to Defendant.

147. As a result of these breaches, Plaintiffs and the Class members were damaged. Plaintiffs and the Class members' PII is being sold by nefarious individuals on the dark web. As a result, Plaintiffs and the Class members have been forced to incur out of pocket costs for credit monitoring, and to take time and effort to cancel credit cards and/or freeze accounts. Plaintiffs and the Class members have also lost the benefit of their bargain. Plaintiffs and the Class members agreed to provide their PII to Defendant with the understanding that their PII would be protected. Had Plaintiffs and the Class members known that their PII would not be protected, they would not have agreed to pay the price for which they contracted. Plaintiffs and the Class members also face a significant risk that their PII will be stolen, that they will lose money, and that their identities will be stolen as a result of the breach. That risk only increases as time passes and no action is taken. Finally, Plaintiffs and the Class members have lost the value of their PII, which has a real market value.

### EIGHTH CLAIM FOR RELIEF CLAIM FOR RELIEF
**Breach of Confidence**
**(On Behalf of Plaintiffs and the Nationwide Class Against Defendant)**

148. Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

149. Plaintiffs and Class members conveyed confidential and novel information to Defendant.

150. Defendant had knowledge that the information was being disclosed in confidence.

151. There was an understanding between Defendant and the Plaintiffs and Class members that the confidence would be maintained.

152.    There was a data breach/disclosure in violation of the understanding.

153.    As a result of these breaches, Plaintiffs and the Class members were damaged. Plaintiffs and the Class members' PII is being sold by nefarious individuals on the dark web. As a result, Plaintiffs and the Class members have been forced to incur out of pocket costs for credit monitoring, and to take time and effort to cancel credit cards and/or freeze accounts. Plaintiffs and the Class members have also lost the benefit of their bargain. Plaintiffs and the Class members agreed to provide their PII to Defendant with the understanding that their PII would be protected. Had Plaintiffs and the Class members known that their PII would not be protected, they would not have agreed to pay the price for which they contracted. Plaintiffs and the Class members also face a significant risk that their PII will be stolen, that they will lose money, and that their identities will be stolen as a result of the breach. That risk only increases as time passes and no action is taken. Finally, Plaintiffs and the Class members have lost the value of their PII, which has a real market value.

## NINTH CLAIM FOR RELIEF CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (On Behalf of Plaintiffs and the Nationwide Class Against Defendant)

154.    Plaintiffs incorporates by reference the allegations contained in each and every paragraph of this Complaint.

155.    Plaintiffs and Class members gave Defendant their PII in confidence, believing that Defendant would protect that information. Plaintiffs and Class members would not have provided Defendant with this information had they known it would not be adequately protected. Defendant's acceptance and storage of Plaintiffs' and Class Members' PII created a fiduciary relationship between Defendant and Plaintiffs and Class members. In light of this relationship, Defendant must act primarily for the benefit of its customers, which includes safeguarding and protecting Plaintiffs' and Class Members' PII.

156.    Defendant has a fiduciary duty to act for the benefit of Plaintiffs and Class members upon matters within the scope of their relationship. It breached that duty by failing to properly protect the integrity of the system containing Plaintiffs' and Class members' PII, failing to comply with data

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

security guidelines, and otherwise failing to safeguard Plaintiffs' and Class members' PII that it collected.

157.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendant's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## TENTH CLAIM FOR RELIEF CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Nationwide Class Against Defendant)

158.    Plaintiffs incorporates by reference the allegations contained in each and every paragraph of this Complaint.

159.    This claim is pleaded in the alternative to the breach of express and implied contract claims.

160.    Plaintiffs and Class members conferred a monetary benefit upon Defendant in the form of monies paid for services which were not provided in full.

161.    Defendant accepted and had knowledge of the benefits conferred upon it by Plaintiffs and Class members. Defendant benefitted from the receipt of Plaintiffs' and Class members' PII, as this was used to facilitate payment.

162.    As a result of Defendant's conduct, Plaintiffs and Class members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiffs and Class members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

163.    Defendant should not be permitted to retain the money belonging to Plaintiffs and Class members because Defendant failed to adequately implement the data privacy and security procedures for itself that Plaintiffs and Class members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

164.    Defendant should be compelled to provide for the benefit of Plaintiffs and Class members all unlawful proceeds received by it as a result of its conduct relating to the Data Breach alleged herein.

**ELEVENTH CLAIM FOR RELIEF CLAIM FOR RELIEF**
**Violation of California's Confidentiality of Medical Information Act**
**Civil Code section 56, *et seq.* ("CMIA")**
**(On Behalf of Plaintiffs and the California Class Against Defendant)**

165.    Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

166.    Plaintiffs bring this claim on behalf of themselves and the California Class.

167.    Defendant is a "Contractor," as that term is defined by Civil Code section 56.05(d), and/or a "Provider of Health Care," as expressed in Civil Code section 56.06. Defendant is therefore subject to the requirements of the CMIA.

168.    Plaintiffs and members of the California Class are "Patients," as defined by Civil Code section 56.05(k).

169.    Plaintiffs and members of the California Class's PII which was the subject of the Data Breach included "Medical Information," as that term is defined by Civil Code section 56.05(j).

170.    In violation of Civil Code section 56.10(a), Defendant disclosed medical information without first obtaining an authorization. The unauthorized nature of that disclosure resulted from the affirmative actions of Defendant, who explsed Plaintiffs' and California Class Members' Medical Information by storing it in a manner which enabled unauthorized users to access it over the public internet. Such was an affirmative communication by Defendant in violation of Civil Code section 56.10(a). Plaintiffs' and members of the California Class's private Medical Information was viewed

and accessed by unauthorized individuals as a direct and proximate of Defendant's violation of Civil Code section 56.10(a).

171. In violation of Civil Code section 56.101(a), Defendant created, maintained, preserved, stored, abandoned, destroyed, or disposed of Medical Information (including Plaintiffs' and California Class Members') in a manner that failed to preserve and breached the confidentiality of the information contained therein. This violation resulted from the affirmative actions of Defendant or its agents who exposed that data on the public internet. This disclosure was an affirmative communicative act by Defendant and a violation of Cal. Civ. Code § 56.101(a). Plaintiffs' and California Class Members' private Medical Information was viewed by unauthorized individuals as a direct and proximate result of Keenan's violation of Civil Code section 56.101(a).

172. Defendant further violated Civil Code section 56.101(a) because Defendant negligently created, maintained, preserved, stored, abandoned, destroyed, or disposed of medical information, including that of Plaintiffs and California Class Members. This violation resulted from the affirmative actions of Defendant or its agents who exposed that private Medical Information on the public internet. This disclosure was an affirmative communicative act by Defendant and a violation of Civil Code section 56.101(a). Plaintiffs' and California Class Members' private Medical Information was viewed by unauthorized individuals as a direct and proximate result of Defendant's violation of Civil Code section 56.101(a).

173. Plaintiffs' and California Class Members' PII that was the subject of the Data Breach included "electronic medical records" or "electronic health records" as referenced by Civil Code section 56.101(c) and defined by 42 U.S.C. § 17921(5).

174. In violation of Civil Code section 56.101(b)(1)(A), Defendant's electronic health record system or electronic medical record system failed to protect and preserve the integrity of electronic Medical Information, including that of Plaintiffs and California Class Members. This violation resulted from the affirmative actions of Defendant or its agents who exposed that Medical Information on the public internet. This disclosure was an affirmative communicative act by Defendant and a violation of Civil Code section 56.101(b)(1)(A). Plaintiffs' and California Class

Members' PII was viewed by unauthorized individuals as a direct and proximate result of Defendant's violation of Civil Code section 56.101(b)(1)(A).

175. In violation of Civil Code section 56.101(b)91)(B), Defendant's electronic health record system or electronic medical record system failed to automatically record and preserve any change or deletion of any electronically stored medical information, including that of Plaintiffs and California Class Members.

176. In violation of Civil Code section 56.101(b)(1)(B), Defendant's electronic health record system or electronic medical record system failed to record the identity of persons who accessed and changed medical information, failed to record the date and time medical information was accessed, and failed to record changes that were made to medical information.

177. In violation of Civil Code section 56.26(a) Defendant, as an entity engaged in the business of furnishing administrative services to health care providers or their affiliates, knowingly used, disclosed, or permitted its employees or agents to use or disclose medical information possessed in connection with performing administrative functions for a program, in a manner not reasonably necessary in connection with the administration or maintenance of the program, or in a manner not required by law, or without authorization. This violation resulted from the affirmative actions of Defendant or its agents who exposed PII on the public internet. This disclosure was an affirmative communicative act by Defendant and a violation of Civil Code section 56.26(a). Plaintiffs' and California Class Members' PII was viewed by unauthorized individuals as a direct and proximate result of Keenan's violation of section 56.26(a).

178. In violation of Civil Code section 56.36(b), Defendant negligently released confidential information or records concerning Plaintiffs and California Class Members. This negligent release of Plaintiffs' and California Class Members' PII to unauthorized individuals resulted from the affirmative actions of Defendant or its agents who exposed that data on the public internet. This disclosure was an affirmative act by Defendant and a violation of Civil Code section 56.36(b). Plaintiffs' and California Class Members' PII was viewed by unauthorized individuals as a direct and proximate result of Defendant's violation of Civil Code section 56.36(b).

179.    In violation of Civil Code section 56.10(d), Defendant intentionally shared, sold, used for marketing, or otherwise used Plaintiffs' and California Class Members' PII for a purpose not necessary to provide health services to Plaintiffs or California Class Members.

180.    In violation of Civil Code section 56.10(e), Defendant further disclosed Plaintiffs' and California Class Members' PII to persons or entities not engaged in providing direct health care services to Plaintiffs or California Class Members, or their providers of health care, or health care service plans, or insurers or self-insured employers.

181.    All of Defendant's acts described herein were done knowingly and willfully by Defendant.

182.    Plaintiffs and California Class Members were injured and have suffered damages, as described herein, from Defendant's illegal disclosure and negligent release of their PII in violation of Civil Code sections 56.10, 56.101, 56.26 and 56.36, and therefore they seek relief under Civil Code sections 56.35 and 56.36, including actual damages, nominal statutory damages of $1,000, punitive damages of $3,000, for each violation, injunctive relief, and attorneys' fees, expenses and costs.

183.    As a direct and proximate result of Defendant's violations of the CMIA, Plaintiffs and California Class Members have faced and will face an increased risk of future harm.

184.    As a direct and proximate result of Defendant's violations of the CMIA, Plaintiffs and California Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

185.    Plaintiffs and California Class Members suffered a privacy injury by having their sensitive Medical Information disclosed, irrespective of whether or not they subsequently suffered identity fraud, or incurred any mitigation damages. Medical Information has been recognized as private sensitive information in common law and federal and state statutory schemes and the disclosure of such information resulted in cognizable injury to Plaintiffs and California Class Members.

## VI.    RELIEF REQUESTED

1.    Plaintiffs, on behalf of themselves, and all others similarly situated, request the Court enter judgment against Defendant as follows:

a. That the Court enter an Order certifying the proposed Nationwide and California Classes, finding Plaintiffs to be adequate representatives and appointing them as Class Representatives and the undersigned counsel as Class Counsel;

b. That the Court enter an Order enjoining Defendant from further unfair and deceptive business practices regarding the maintenance and protection of Defendant's customer's PII;

c. That the Court make an award to Plaintiffs and the Nationwide and California Classes for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

d. That the Court award restitution;

e. The the Court declare, adjudge, and decree that Defendant must make full restitution to Plaintiffs and Class members;

f. That the Court award attorneys' fees and costs, as allowed by law including, without limitation, to California Code of Civil Procedure section 1021.5;

g. The the Court award pre-judgment and post-judgment interest, as provided by law;

h. That the Court award actual and punitive damages in favor of Plaintiffs; and

i. That the Court award such other relief as may be just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury of any and all issues in this action triable of right by jury.

Dated: February 26, 2024         **MALLISON & MARTINEZ**

By: _____
        Stan Mallison
        Hector Martinez
        Cody Bolce
        Dan Keller
        Attorneys for Representative Plaintiffs
        and the Plaintiff Class